586 A.2d 860

JOSEPH MURPHY, MARY ELLEN AGUNZO, AND DAVID KOTKES, PLAINTIFFS, v. ALLSTATE INSURANCE COMPANY, KENNETH D. MERIN, COMMISSIONER NEW JERSEY DEPARTMENT OF INSURANCE AND NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, DEFENDANTS.

Superior Court of New Jersey
Law Division Ocean County

Decided December 7, 1990.

*Anthony M. Sellitto, Jr.* for plaintiffs.

*Francis X. Ryan* for defendant New Jersey Automobile Full Insurance Underwriting Association (*Green, Lundgren & Ryan* attorneys).

*Donald Parisi* for defendant Kenneth D. Merin, Commissioner New Jersey Department of Insurance (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

ROSALIE B. COOPER, J.S.C.

Before this court, in this case of first impression, are cross-motions for summary judgment for a declaration concerning the constitutionality, as of 1989, of *N.J.S.A.* 39:6A–8 of the New

Jersey Automobile Reparation Reform Act commonly known, and hereafter referred to, as the "no fault" insurance law. *N.J.S.A.* 39:6A–1 *et seq.*

The underlying cause of action arose from a 1989 automobile accident in which plaintiffs, passengers in a car, sustained injuries for which they are seeking monetary payment or reimbursement.

Previously that aspect of the suit concerning the culpability of Allstate Insurance Co., the servicing carrier for the New Jersey Automobile Full Insurance Underwriting Association, known as the JUA, was dismissed by stipulation.

The Attorney General has joined in JUA's motion, essentially relying on the arguments advanced and relied upon by that defendant.

Since the issue of the constitutional validity of *N.J.S.A.* 39:6A–8 cannot be considered in a vacuum, this court looks for guidance to other sections of the "no fault" statute.

*Section three* of the act, in pertinent part, requires owners of automobiles registered in or principally garaged in New Jersey to maintain auto insurance.

*Section four* of the act establishes personal injury protection, commonly known as "PIP" coverage to include medical payment for an insured and members of the family who are economically dependent and residing in the insured's household who suffer injuries resulting from "ownership, operation, maintenance or use" of an automobile. In addition, PIP encompasses passengers in the insured's cars who have no insurance of their own.

PIP benefits also include income continuation benefits, essential service benefits, death benefits and funeral expenses.

*Section eight* of the act, as of 1989, known as the "threshold provision" states:

One of the following two tort options shall be elected, in accordance with section 14.1 of P.L.1983, c. 362 (C.39:6A–8.1), by any named insured required to

maintain personal injury protection coverage pursuant to section 4 of P.L.1972, c. 70 (C.39:6A–4):

   a.   Every owner, registrant, operator or occupant of an automobile to which section 4 of P.L.1972, c. 70 (C.39:6A–4), personal injury protection coverage, regardless of fault, applies, and every person or organization legally responsible for his acts or omissions, is hereby exempted from tort liability for noneconomic loss to a person who is subject to this subsection and who is either a person who is required to maintain the coverage mandated by this act, or is a person who has a right to receive benefits under section 4 of P.L.1972, c. 70 (C.39:6A–4), as a result of bodily injury, arising out of the ownership, operation, maintenance or use of such automobile in this State, unless that person has sustained a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment; or

   b.   As an alternative to the basic tort option specified in subsection a. of this section, every owner, registrant, operator, or occupant of an automobile to which section 4 of P.L.1972, c. 70 (C.39:6A–4) applies, and every person or organization legally responsible for his acts or omissions, shall be liable for noneconomic loss to a person who is subject to this subsection and who is either a person who is required to maintain the coverage mandated by P.L.1972, (C.39:6A–1 et seq.) or is a person who has a right to receive benefits under section 4 of that act (C.39:6A–4), as a result of bodily injury, arising out of the ownership, operation, maintenance or use of such automobile in this State.

   The tort option provisions of *subsection a.* of this section shall also apply to the right to recover for noneconomic loss of any person eligible for benefits pursuant to section 4 of P.L.1972, c. 70 (C.39:6A–4) but who is not required to maintain personal injury protection coverage and is not an immediate family member, as defined in section 14.1 of P.L.1983, c. 362 (C.39:6A–8.1), under an automobile insurance policy.

   The tort option provisions of subsection a. of this section shall also apply to any person subject to section 14 of P.L.1985, c. 520 (C.39:6A–4.5).

   The tort option provisions of subsections a. and b. of this section as provided in this 1988 amendatory and supplementary act shall apply to automobile insurance policies issued or renewed on or after January 1, 1989 and as otherwise provided by law.  [*N.J.S.A.* 39:6A–8; emphasis supplied]

Thus, it is clear that *N.J.S.A.* 39:6A–8, which is applicable to the case at bar, deals with the classification of individuals to whom no auto insurance is available, being neither auto owners nor residents in a household in which a car owner does have

insurance, who are, by legislation, relegated to the "verbal threshold" position.

The conclusions reached by this court are largely dependent upon the legal reasoning and fundamentals set forth in the cases of *Barone v. Department of Human Services,* 107 *N.J.* 355, 526 *A.*2d 1055 (1987), *Frazier v. Liberty Mutual Insurance Co.,* 150 *N.J.Super.* 123, 374 *A.*2d 1259 (Law Div.1977), *Rybeck v. Rybeck,* 141 *N.J.Super.* 481, 358 *A.*2d 828 (Law Div.1976), app. dism., 150 *N.J.Super.* 151, 375 *A.*2d 269 (App. Div.1977), and the cases cited therein.

It should be noted that the basic factual situation in *Barone* is distinguishable from that under consideration since *Barone* deals with legislation *excluding* the parties; whereas the case at bar deals with legislation *including* plaintiffs, as was the factual scenario in *Frazier* and *Rybeck.* Nevertheless, the reasoning of the Supreme Court in *Barone* clarifies and elucidates the basic issues and the law which will be applied by this court.

Plaintiffs claim discrimination on account of their disabilities, poverty and unemployment, which this court finds is subsumed in the constitutional issue to be addressed by this court, that is, whether the preclusion of plaintiffs' formulating a choice under the "threshold" legislation denies them equal protection of the law according to the dictates of either the New Jersey Constitution or the United States Constitution.

In each case considered in coming to the decision in this matter, the legislative history of the statute involved weighed heavily. The history applicable to "threshold" legislation is hereafter considered.

Further, to clarify the position of this court, it should be noted that, in 1990, the New Jersey Legislature amended *N.J. S.A.* 39:6A–8. The amended section provides that any person who is not insured or is not an immediate family member, as defined in section 14.1 of *L.*1983, *c.* 362, *N.J.S.A.* 39:6A–8.1, will be categorized under the tort option provision of subsection (b).

Subsection (b) permits one to recover for the noneconomic loss which is a result of bodily injury, arising out of the ownership, operation, maintenance or use of such automobile in this State. Prior to the 1990 amendment, this group was subject to subsection (a) which declares the "verbal threshold" as the basic liability coverage. This is the context in which this case is decided, it being understood, for the purpose of this argument, that the underlying accident gives rise to a claim for consequent bodily injuries.

The amendment acts as a refutation of defendant's position that the Legislature had no choice but to relegate plaintiffs or those similarly situated to the "verbal threshold" position.

In researching the legislative history of this statute, it is obvious that "no fault" insurance is a complex and controversial topic with many ramifications, not least among them, "threshold" *vs.* "no-threshold" issues. In 1988, in the Governor's reconsideration and recommendation statement to Senate Bill 2637 (1988), it was recommended that the "verbal threshold" be deemed the basic liability coverage in every *automobile insurance policy* in New Jersey. At the same time, an *insured* would be permitted to choose a monetary threshold, at a higher cost. Governor Kean stated that the purpose "of the zero-dollar option is to remove the incentive to inflate medical bills—thereby placing an unnecessary burden on PIP coverage—in order to reach some specified monetary threshold." The Governor also posited that the majority of people would maintain the base "verbal threshold" since the medical bills would be promptly paid and "they (the insured) [lose] next to nothing in relinquishing the ability to sue for non-serious injuries." *Id.* at 3.

It is most important to note that those individuals who did not own cars and who were not immediate family members covered under an automobile insurance policy were not given the choice offered to insureds. These people were arbitrarily

placed into subsection (a) which provides the basic "verbal threshold" coverage.

The Automobile Insurance Reform Report of 1990 is helpful in understanding the reasoning for the "no-fault" insurance within New Jersey. In its examination of the "verbal threshold" in New Jersey, it was concluded that there is a definite need for a tort "threshold." *Id.* at 104. Such a "threshold" is thought to encourage settlements, discourage lawsuits and to decrease the cost of insurance.

However, it is significant to recognize that the only people who benefit from lower insurance costs are those individuals who own motor vehicles and purchase insurance. A person who neither maintains an automobile nor resides with a person who does is not a recipient of the choice of higher or lower premiums. Thus, these individuals not only experience the disadvantages of not owning a car, but in addition they are not afforded the right to receive the advantages flowing from the higher or lower tort "threshold."

It was noted that in the first six months during which the "verbal threshold" was offered, 83% of motorists elected the basic "threshold." *Id.* at 5. However, it is imperative to understand that these motorists were permitted to choose the type of protection they desired. Those citizens without insurance were denied the opportunity to choose the level of protection and were automatically assigned the "verbal threshold" option. Bearing this in mind, it is interesting that the report concludes that the "motorists have shown, this is truly the choice of New Jersey Citizens." *Id.* at 5.

Again, we must recognize that in 1990, when the statute was amended, New Jersey citizens who did not own automobiles or fall within the parameters of insureds were placed in the "no-threshold" category. The reason for the sudden change is not explicitly addressed in the legislative history nor in the legislation itself. The amendment clearly does not further the stated goals of the optional threshold selection. Premiums

would either remain unaffected or increase since the change involves those who do not pay automobile insurance and the number of lawsuits may now increase in the "no threshold" category.

Common sense dictates that the Legislature must have realized that, to deny people the opportunity to choose coverage and to automatically place them in the "verbal threshold" category, was to deny them the privilege of being more fully compensated for injuries and noneconomic losses or to benefit from lower insurance premiums since such persons were not privy to the insurance contracts. Without this volition, they were subjected to all the disadvantages of the "verbal threshold." Obviously, the legislators discerned that by such categorization, people in plaintiffs' situation were denied equal protection under the federal and state constitutions. The amended statute corrects that violation of due process.

Out-of-State decisions have been bolstered in significant part by legislative history. See, *e.g.*, the Michigan case of *Crowley v. Detroit Automobile Inter–Insurance Exchange*, 428 *Mich.* 270, 407 *N.W.*2d 372 (1987), in which plaintiff's position precluded him from a double recovery of medical expenses. That case was decided under the rational basis test which will be discussed, *infra*.

Defendants contend that the New Jersey Legislature was entitled to decide, in general, that it was desirable: (a) to determine the circumstances underlying basic compensation for all accident victims for economic losses, without regard to fault, (b) to fund such compensation through the automobile insurance system, and (c) to offset the cost of providing such compensation by curtailing the rights of those suffering less serious injuries to recover in tort for noneconomic losses, thereby eliminating both compensation for such losses and substantial legal fees and other loss adjustment expenses which would be necessary to process and resolve claims for such compensation. Defendants argue that this basic structure is fundamen-

tal to a common type of "no-fault" automobile accident compensation system and has been uniformly upheld against an equal protection challenge in the *absence of other flaws* in the particular system.

Defendant argues that in light of the financial pressures which have plagued the New Jersey "no-fault" system from its inception, it seems clearly rational for the Legislature to decide that those desiring supplemental tort compensation for less serious accidents should pay for it themselves and should not be permitted to impose that cost on other motorists or on the public at large. Defendant further contends that it appears entirely rational to decide that the automobile insurance system was the most efficient way for those desiring "no-threshold" coverage to make that election and contribute the funds necessary to support such compensation.

Despite these general arguments, however, defendants acknowledge that some people, such as plaintiffs, do not participate in the automobile insurance system because they neither own cars nor live with those who do. Unless they were to be given the supplemental tort compensation without contributing to its funding or a special mechanism were to be established to permit them to make the "no-threshold" election and pay the premium, it is claimed there was little alternative but to subject them automatically to the lawsuit "verbal threshold." According to defendant, given the alternatives, that appears clearly to be a choice which is both legitimate and rational. (See prior clarification of this aspect of the case, *supra*, at 5–6.)

Both parties agree that the "no fault" as well as "threshold" structures have generally been upheld against equal protection challenges, not only in New Jersey, see *Rybeck, supra,* but throughout the United States.

Both the United States Constitution, Amend. XIV and the New Jersey Constitution (1947), Art. 1, par. 1, (which may afford greater protection) are involved in this case, since both apply the same basic tests.

A priority is the necessity of studying the goals to be attained as compared to any infringement on individual rights. The State must demonstrate the legitimate furthering of its interests and whether the restrictions imposed are necessary to the achievement of its purpose. Put another way, there must be "a real and substantial relationship between the classification and the governmental purpose it purportedly serves." *Barone, supra,* 107 *N.J.* at 368, 526 *A.*2d 1055.

It is generally acknowledged that the constitutionality of legislation is presumed unless clearly repugnant to the constitution. *Id.* at 369–370, 526 *A.*2d 1055. and cases cited therein. The court may not substitute its judgment for that of the Legislature. *Frazier, supra,* 150 *N.J.Super.* at 130, 374 *A.*2d 1259.

In considering equal protection cases, the courts have applied a three pronged test:

1. The validity of the classification as suspect; or
2. semi suspect; or
3. the rational basis test.

Suspect classification requires the greatest scrutiny on the part of the court in assessing the validity of the legislation. Semi-suspect classification requires minimal or intermediate scrutiny only. If neither classification is found to exist, the rational basis test must be applied, that is, the legislation must be rationally related to the acknowledged legitimate state interest. *Barone, supra,* 107 *N.J.* at 365, 526 *A.*2d 1055.

To hold that a suspect classification is involved, the infringement of a fundamental right must be found. If established, application of strict scrutiny requires that the statute must further a compelling state interest and there must be no less restrictive way of accomplishing the stated objective. *Ibid.* Fundamental rights include those pertaining to race, religion, illegitimacy, procreation, interstate travel, personal privacy, skin color and physical features or have a history of unequal and unprotected status. *See Rybeck, supra,* 141 *N.J.Super.* at

494, 358 *A*.2d 828 and *Frazier, supra,* 150 *N.J.Super.* at 139, 374 *A*.2d 1259.

If the classification is determined to be suspect, the burden is on the State to demonstrate the existence of a compelling state interest through a balancing of that interest with those asserted by the party attacking the legislation. *Frazier, supra* at 139, 374 *A*.2d 1259.

Intermediate scrutiny is applied to semi-suspect classifications. Such classification has been defined as one including or affecting a group whose fundamental rights are questioned in an indirect manner. To withstand this type of scrutiny, the legislation must serve important legislative objectives—only when "concerns sufficiently absolute and enduring can be clearly ascertained from the constitution and the court decisions." *Barone, supra* 107 *N.J.* at 365, 526 *A*.2d 1055. Classifications such as gender and statutes requiring fees for primary elections are included in this category.

Neither poverty, disability, wealth or indigency, see *Frazier, supra,* nor the inability to sue for automobile accidents, see *Rybeck, supra,* are considered fundamental rights.

As stated previously, if neither classification is present, the legislation must be reviewed under the third prong, the rational basis test.

This court finds that neither classification criteria is applicable to these plaintiffs, since they are neither members of a suspect nor a semi-suspect class. Furthermore, by emphasis on the rational basis test, plaintiffs and defendant have virtually conceded this factual analysis.

The rational basis test if multifaceted. The legislation must be reasonably related to the achievement of the goals proffered. *Barone, supra* at 365, 526 *A*.2d 1055. The statute must withstand the test although it may result in some minor inequality. It must be supported by reason or facts to justify its existence. *Id.* at 367, 526 *A*.2d 1055. Such facts are presumed to exist. The burden is on plaintiffs to demonstrate the lack of

relationship of the legislation to legitimate state objectives. *Frazier, supra,* 150 *N.J.* at 139, 374 *A.*2d 1259. Only when the classification is irrelevant to state objectives is there a constitutional violation. *Id.* at 138, 374 *A.*2d 1259.

In upholding the "threshold" position in *Rybeck,* 141 *N.J.Super.* at 489, 358 *A.*2d 828, the court stated:

> The simple answer is that auto accident injury claims were reasonably seen by the Legislature to present a special problem requiring reform. It was that class of claims that created the calendar congestion, that ate up the investigative and administrative insurance dollar, that represented justice worst delayed, and that most invited compensation without fault determination. Such claims plainly represent an identifiable class whose unique treatment is justified by the special problems it creates. [141 *N.J.Super.* at 489, 358 *A.*2d 828]

However, it is important to determine the context of this statement in that the court was directly addressing the injuries suffered as distinct from those suffering the injuries. Neither the question of insurance premiums nor election of "threshold" was considered.

As proffered to this court, basically, it is defendant's contention that election of the "no threshold" position requires the payment of a premium. Plaintiffs did not pay such a premium, *ergo,* they are relegated to the "verbal threshold" position. In fact, plaintiffs paid nothing at all. In reviewing the validity of that argument it could be claimed that since plaintiffs paid nothing, they should not be included in any category. However, they are clearly included under the "no fault" legislation. Further argument speaks to the administrative milieu as did *Barone,* and in the lack of provision permitting non-insured persons to pay the difference between the "verbal" and "non-verbal" threshold. To provide for such payment would create, it is contended, an administrative nightmare. This conclusion has not been demonstrated to this court's satisfaction.

This court finds that the legislative history demonstrates the intent of the Legislature in creating options within the "threshold" legislation. These options permitted insured persons to be given a choice of how much they would pay for insurance. They were permitted under the legislation, here in issue, to

decide between "threshold" and "non-threshold," whether or not to pay approximately $80 a year according to defendant's mathematical calculation.

Defendant's argument that plaintiffs, if given an opportunity to pay the increased premiums, would elect the "verbal" threshold is purely speculative.

Utilizing the rational basis test, it is the opinion of this court that including plaintiffs under provision *N.J.S.A.* 39:6A–8(a) without affording them the opportunity of paying a fee to increase their coverage or exempting them from same, exceeds the bounds of rationality, that is the acknowledged relationship of the tendered legislation to the achievement of the declared legitimate state interest. This classification, in which plaintiffs are automatically included in section (a), is completely irrelevant to the stated objective of the legislation, permitting insured persons the choice of "threshold" or "non-threshold" coverage for PIP payments, thereby controlling the cost of such insurance.

Utilizing the applicable tests, this court opines that the legislation, as to these plaintiffs, constitutes an unconstitutional denial of equal protection under both the United States and New Jersey State Constitutions. This court finds that plaintiffs have demonstrated the lack of the relationship of the legislation to legitimate state objectives.

Plaintiffs are directed to draft an order incorporating the decision of this court and including plaintiffs in the "no-threshold" category under section eight of the "no fault" statute.