We perceive no merit to any of the other contentions of the
defendants.

Accordingly, the judgments of the Passaic County Court
are affirmed.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
MAHMOUD ARSLANOUK, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 13, 1979—Decided March 30, 1979.

388

Before Judges MATTHEWS and KOLE.

*Mr. Fred A. Iannaccone,* attorney for appellant.

*Mr. Burrell Ives Humphreys,* Passaic County Prosecutor, attorney for respondent (*Mr. Gary H. Schlyen,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

MATTHEWS, P. J. A. D. Defendant was found guilty in the Municipal Court of Bloomingdale, Passaic County, of operating a motor vehicle without liability insurance, in violation of *N. J. S. A.* 39:6B-2. He was also adjudged guilty of careless driving (*N. J. S. A.* 39:4-97) and driving an unregistered vehicle (*N. J. S. A.* 39:3-4). He was found not guilty of a charge of driving with fictitious plates.

On *de novo* review in the Passaic County Court of the adjudication of driving without mandatory insurance, defendant was again found guilty and sentenced to $50 fine, $15 costs and revocation of license privilege for six months.

On June 2, 1978 an officer of the Bloomingdale Police Department approached the car which defendant was operating and asked him for his license, registration and insurance card. Defendant produced a valid driver's license and a California ownership certificate which had expired some 2½ years earlier. He did not produce any proof of insurance. He told the officer the car belonged to a friend of his who came from California and that he had no idea if the vehicle was insured or not. The California license plates on the vehicle bore an expiration tag for December 1975.

Defendant testified that he had borrowed the car on June 2, 1978 from a friend of his who came from California five weeks before to visit his father who had a heart attack. He had not driven the car prior to June 2. He did not know if the car was insured. He thought the car was registered, due to the fact that the friend had driven all the way from California. When he received the car from his friend he had not asked if he had insurance but asked for the papers. The friend had opened the glove compartment and said they were there. He acknowledged having looked at the California ownership certificate.

The municipal court judge found that *N. J. S. A.* 39:6B-2 was applicable to the facts before him, as covering a vehicle not registered in New Jersey, and found the defendant guilty of offense.

Before the County Court it was again argued by defendant that the statute did not apply in the instant case. The judge held to the contrary, finding it covered vehicles coming from out of the State as well as New Jersey vehicles, and affirmed the conviction.

The pertinent portion of *N. J. S. A.* 39:6B-2, violation of which defendant stands convicted, provides in pertinent part:

> \* \* \* any operator who operates or causes a motor vehicle to be operated and who knows or should know from the attendant circumstances that the motor vehicle is without motor vehicle liability insurance coverage required by this act shall be subject, for the first offense, to a fine of not less than $50.00 nor more than $200.00 or imprisonment for a term of not less than 30 days nor more than 3 months or both, in the discretion of the municipal judge, and shall forthwith forfeit his right to operate a motor vehicle over the highways of this State for a period of 6 months from the date of conviction. \* \* \*

Thus, the sanction is imposed upon a driver who operates a vehicle which is without the liability insurance coverage "required by this act." That section, in turn, has reference to *N. J. S. A.* 39:6B-1 which mandates that every owner or registered owner of a vehicle "registered or principally garaged in this State" shall maintain motor vehicle liability insurance coverage within the minimal amounts of coverage set forth in the statute.

The question presented is whether the statute applies to any vehicle present in this State regardless of the state of registration or extent of its presence in this State. The clear language of the statute, in referring only to vehicles "registered or principally garaged in this State," appears to negate such a construction. The County Court apparently relied on the language of this court in *State v. Schumm*, 146 *N. J. Super.* 30, 34 (App. Div. 1977), aff'd 75 *N. J.* 199 (1978), that "the purpose of the statute was to keep uninsured vehicles off the road for the protection of the public \* \* \*." We reaffirm such to be the purpose of the statute but point out that *Schumm* did not concern the applicability of the

statute to out-of-state registered vehicles. Accordingly, the language quoted should not be regarded as holding that the statute has application to such vehicles. Compare: *State v. McCourt,* 131 *N. J. Super.* 283, 287 (App. Div. 1974); *American Hardware Mut. Ins. Co. v. Bradley,* 153 *N. J. Super.* 72, 76, 77 (App. Div. 1977), and *Buzzone v. Hartford Acc. and Ins. Co.,* 23 *N. J.* 447, 452–453 (1957).

Here, the automobile in question was not registered in this State. In addition, we reject the argument (and the State agrees with our rejection) which might be advanced that the statute was applicable by virtue of the fact of the five-week presence of the vehicle in New Jersey prior to its operation by defendant. It is clear that the judgments of guilty rendered by the courts below were not based on such a finding but, rather, were founded on the assumption that the statute applied to any vehicle present in the State, regardless of registration or place where the auto was "principally garaged." Moreover, as the State points out, it is debatable whether a five-week presence in New Jersey under the circumstances here presented, where the owner came from California to visit his father who had suffered a heart attack and intended to return to California, would sustain a finding that the automobile was "principally garaged in this State" as of the date of the alleged violation. See, *e. g., Handal v. American Farmers Mut. Cas. Co.,* 79 *Wis.* 2d 67, 255 *N. W.* 2d 903 (Sup. Ct. 1977); *Sutton v. Hawkeye Cas. Co.,* 138 *F.* 2d 781 (6 Cir. 1943); *State Farm Mut. Auto. Ins. Co. v. Porter,* 186 *F.* 2d 834 (9 Cir. 1950); but *cf. Republic Indem. Co. v. Martin,* 222 *F.* 2d 438 (10 Cir. 1955) (intimating that if the new location was intended to be a permanent place of residence, such might be considered as the place where the vehicle was "principally garaged" even if there only for a brief period prior to an accident).

We find that the language of *N. J. S. A.* 39:6B–1, in referring to vehicles either registered *or* principally garaged in this State, was enacted to cover vehicles registered in New Jersey and also to preclude New Jersey residents

from going elsewhere to register their vehicles and thus avoid the compulsory insurance mandated by the statute, and further to insure that out-of-state residents who keep (and presumably use) their vehicles predominately in this State obtain coverage. We find no basis to find that it would cover a transient out-of-state visitor who might be in the State. The record below does not sustain a finding, beyond a reasonable doubt, that the vehicle herein involved was within the coverage of *N. J. S. A.* 39:6B–1. The State advises us that it "feels obligated to concur in defendant's position that that statute does not apply and that the conviction should be reversed."

Reversed.