259 N.J. Super. 482 (1992)
614 A.2d 189
MARTIN H. WATKINS, PLAINTIFF,
v.
MARGARET E. DAVIS, DEFENDANT.
Superior Court of New Jersey, Law Division Hunterdon County.
Decided August 31, 1992.
*485 Alan M. Tepper, for plaintiff, Martin H. Watkins (Alan M. Tepper, attorney).
Gregory A. Drews, for defendant, Margaret E. Davis (Martin & Simmonds, attorneys).
Donald Parisi, Deputy Attorney General for the State of New Jersey as limited intervener on the issue of the constitutionality of N.J.S.A. 17:28-1.4.
BERNHARD, J.S.C.
Before this court are two motions which again require a New Jersey court to address the validity and applicability of New Jersey's "No-Fault" automobile insurance laws. Specifically, plaintiff Martin H. Watkins brings this motion to strike the separate defense raised in the responsive pleading of defendant, Margaret E. Davis which contends:
The accident set forth in the Complaint occurred after the effective date of the New Jersey Reparations Reform Act, N.J.S.A. 39:6A-1, et seq., and therefore plaintiffs (sic) have failed to state (a) cause of action against defendants (sic).
The defendant has filed a cross-motion for summary judgment on the basis that plaintiff's cause of action is barred due to his failure to meet the statutory "verbal threshold" to be eligible to sue for noneconomic loss.
For the purposes of both motions, the facts are essentially uncontested. On June 16, 1989, plaintiff was involved in a motor vehicle accident in East Amwell Township, County of Hunterdon, State of New Jersey. It is alleged that plaintiff's vehicle was struck in the rear by the vehicle driven by defendant, *486 Margaret E. Davis. Plaintiff filed his complaint in this court seeking recovery from the defendant for his pain and suffering. For the purposes of the issues addressed in this opinion, defendant is presumed to be entirely liable for the accident.
At all times relevant hereto, Mr. Watkins was a Pennsylvania resident and was insured with an automobile liability insurance policy written through Aetna Life and Casualty Insurance Company in Pennsylvania. Aetna Life and Casualty Insurance Company was also authorized to issue policies of automobile insurance in the State of New Jersey. The policy of insurance in question provided the plaintiff with liability coverage in addition to first party (PIP) benefits under Pennsylvania law. At the time of this accident, the Commonwealth of Pennsylvania did not limit the right of an individual to bring an action for noneconomic damages arising out of a motor vehicle accident.
Plaintiff brings this motion to strike the separate defense of the defendant which asserts that the plaintiff's cause of action is barred by his failure to meet the New Jersey verbal tort threshold requirements. Specifically, the plaintiff asserts that the portions of the New Jersey statutes that apply the verbal tort threshold requirements to out of state drivers whose insurance companies are authorized to do business in New Jersey violates his constitutional rights.
Plaintiff challenges the constitutionality of N.J.S.A. 17:28-1.4 which provides:
Any insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State ... which sells a policy providing automobile or motor vehicle liability insurance coverage, or any similar coverage, in any other state or in any province of Canada, shall include in each policy coverage to satisfy at least the liability insurance requirements of (N.J.S.A. 39:6B-1) or (N.J.S.A. 39:6A-3), the uninsured motorist insurance requirements of (N.J.S.A. 17:28-1.1), and personal injury protection benefits coverage pursuant to (N.J.S.A. 39:6A-4) or of (N.J.S.A. 17:28-1.3), whenever the automobile or motor vehicle insured under the policy is used or operated in this State.
Any liability insurance policy subject to this section shall be construed as providing the coverage required herein, and any named insured, and any immediate family member as defined in (N.J.S.A. 39:6A-8.1), under that policy, *487 shall be subject to the tort option specified in subsection a of (N.J.S.A. 39:6A-8). (emphasis added).
As plaintiff's insurance company, Aetna Life and Casualty Insurance Company was an insurer authorized to transact and/or was transacting automobile insurance business in New Jersey, the liability insurance policy provided to the plaintiff in Pennsylvania is construed under this statute to provide the "No-Fault" coverage required in New Jersey.
Moreover, plaintiff is therefore subject to the tort option specified in N.J.S.A. 39:6A-8(a). That statute provides:
Every owner, registrant, operator or occupant of an automobile to which (N.J.S.A. 39:6A-4), personal injury protection coverage, regardless of fault, applies, and every person or organization legally responsible for his acts or omissions, is hereby exempted from tort liability for noneconomic loss to a person who is subject to this subsection and who is either a person who is required to maintain the coverage mandated by this act, or is a person who has a right to receive benefits under (N.J.S.A. 39:6A-4), as a result of bodily injury, arising out of the ownership, operation, maintenance or use of such automobile in this State, unless that person has sustained a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment.
Thus, the defendant, Margaret E. Davis would be exempt from tort liability for the plaintiff's noneconomic loss unless the plaintiff has sustained a personal injury falling within at least one of the nine categories outlined above.

I. CONSTITUTIONALITY OF N.J.S.A. 17:28-1.4, THE "DEEMER STATUTE"

Plaintiff generally alleges that N.J.S.A. 17:28-1.4 or the "deemer statute" violates various constitutional rights. However, plaintiff does not cite any authority or make any legal arguments as to these various rights and in substance only argues that this court should find N.J.S.A. 17:28-1.4 to be unconstitutional under the Equal Protection Clause, U.S. Const. *488 Amend. XIV. It is recognized that N.J. Const. art. I, ¶ 2 "like the fourteenth amendment, seeks to protect against injustice and against the unequal treatment of those who should be treated alike." Greenberg v. Kimmelman, 99 N.J. 552, 568, 494 A.2d 294 (1985).
Plaintiff alleges that he is a member of a class that is being denied equal protection under the law. The class is identified as out-of-state automobile drivers that operate an automobile in New Jersey and whose insurance carriers are authorized to transact or do business in this state.
As a preliminary matter, this court finds that the statute in question does not operate to the disadvantage of a "suspect class" or impinge upon a "fundamental right", thereby requiring strict judicial scrutiny. A suspect class is one "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." San Antonio School District v. Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973). Fundamental rights are those which are "explicitly or implicitly guaranteed by the Constitution." Id. at 33, 93 S.Ct. at 1297.
Neither does the statute regulate a "semi-suspect" class or substantially affect a fundamental right in an indirect manner subjecting it to an "intermediate scrutiny" equal protection analysis. An example of a "semi-suspect" class which has been subjected to intermediate scrutiny is one based upon gender. Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). A statute requiring filing fees for primary elections is an example of a statute found to substantially affect a fundamental right in an indirect manner. Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). However, neither poverty, disability, wealth or indigency are considered to be fundamental rights. Frazier v. Liberty Mutual Insurance Co., 150 N.J. Super. 123, 374 A.2d 1259 (Law Div. 1977). Moreover, *489 the inability to sue for automobile accidents is not considered to be a fundamental right. Rybeck v. Rybeck, 141 N.J. Super. 481, 358 A.2d 828 (Law Div. 1976).
Thus, in the absence of a "suspect" or "semi-suspect" classification, the legislation in question must withstand a "rational basis" test for the purposes of equal protection analysis. Barone v. Department of Human Services, 107 N.J. 355, 526 A.2d 1055 (1987). The rational basis test requires the statute to be rationally related to the achievement of a legitimate state interest. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).
The plaintiff alleges that there is no rational basis to impose upon certain "non-residents" the verbal threshold while not imposing it upon other "non-residents" merely because an insurer is "New Jersey affiliated". Plaintiff points out that non-residents whose insurance companies do not fall within N.J.S.A. 17:28-1.4 (i.e. are not authorized to transact and are not transacting automobile insurance business in New Jersey) are not subjected to the New Jersey verbal threshold and have an "unlimited" right to sue for non-economic losses.
The Appellate Division in Murphy v. Allstate Ins. Co., 252 N.J. Super. 280, 599 A.2d 916 (App.Div. 1991) addressed a similar constitutional challenge to the New Jersey verbal threshold law. In that case, the Appellate Division held that the equal protection clause was not violated by N.J.S.A. 39:6A-8.1(b), which at the time provided that persons who neither owned an automobile nor lived in a household of an immediate family member who owned an automobile had to meet the statutory "verbal threshold" of serious injury to be eligible to recover for noneconomic loss.
The lower court in Murphy had concluded that the statute was not rationally related to a legitimate state interest as it denied the class in question the option of choosing either the "threshold" or "non-threshold" coverage but rather deemed the class to have chosen the "threshold" option. Murphy v. Allstate *490 Ins. Co., 246 N.J. Super. 42, 586 A.2d 860 (Law Div. 1990). However, in reversing the lower court, the Appellate Division identified a "more comprehensive" state interest. Specifically, the Appellate Division held:
In our view the state interest was to make no-fault PIP benefits available to all people injured in automobile accidents without raising the general level of automobile insurance premiums. The Legislature attempted to accomplish this goal by relieving insurers from having to pay noneconomic damages to people not seriously injured. Insureds who elect to recover for minor injuries have to pay an added premium for themselves and household members of their immediate family. PIP beneficiaries such as plaintiffs cannot make such an election because they do not buy automobile insurance and are not part of the household of an immediate family member who does. Although the Legislature probably could devise a means for people in plaintiff's class to buy no-threshold coverage, as a matter of administrative convenience the Legislature instead deemed them subject to the verbal threshold.
[Murphy v. Allstate Ins. Co., 252 N.J. Super. 280, 599 A.2d 916 (App.Div. 1991), citing, Drew Associates of NJ, LP v. Travisano, 122 N.J. 249, 265, 584 A.2d 807 (1991).]
In noting that the Legislature had later amended the statute in question to deem people in the class to have elected the no-threshold option, the court held that "Versions of the statute deeming the class to have elected the threshold option or to have elected the no-threshold option are both reasonable and therefore neither version offends the constitution." Murphy, supra, 252 N.J. Super. at 286, 599 A.2d 916.
The arguments raised by plaintiff, Martin H. Watkins with respect to the rational basis test are analogous to those posed by the plaintiffs in Murphy. Specifically, Mr. Watkins contends that as an out-of-state insured, he was unable to elect the no-threshold option but rather was "deemed" to have elected the threshold option merely because his Pennsylvania insurance carrier also conducted automobile insurance business in New Jersey and he happened to be driving in this State. Mr. Watkins identifies the state interest in question as the lowering of car insurance premiums for residents of New Jersey. According to plaintiff, the automatic assignment of the verbal threshold to out-of-state residents in plaintiff's class will not result in lower premiums for New Jersey drivers as the legislation *491 does not account for those out-of-state drivers who are not insured with carriers authorized to do business in New Jersey. Finally, plaintiff asserts that there is no rational basis for distinguishing between out-of-state drivers whose insurance companies transact business in New Jersey and those whose insurance companies do not transact business in this state.
Whether the purpose of this statute was to: 1) lower the insurance premiums of New Jersey insureds; 2) materially reduce the number of auto-related personal injury cases litigated in the courts; 3) make no-fault PIP benefits available to all people injured in automobile accidents in New Jersey without raising the general level of premiums; and/or all of the above; it is clear that these are legitimate state interests to which the statute is rationally related.
N.J.S.A. 17:28-1.4 not only subjects the class in question to the "verbal threshold" of N.J.S.A. 39:6A-8.1(a), it construes the "out-of-state" policy as providing the more expansive coverage required under New Jersey No-Fault Law (ie. liability insurance requirements, uninsured motorist insurance requirements, and personal injury protection benefits coverage). There is a rational basis for imposing upon this class the verbal threshold, even though they do not have the opportunity to elect the "no-threshold", as these individuals are receiving the benefit of a more comprehensive series of benefits without regard to fault under New Jersey law.
Plaintiff's argument that the statute does not affect out-of-state drivers whose insurance companies do not transact business in New Jersey, while accurate, does not dictate a finding that the classification in question is unconstitutional. While still having the ability to pursue their noneconomic losses in the New Jersey courts, these out-of-state drivers do not receive the benefit of New Jersey No-Fault Law outlined above. Moreover, imperfect classifications that are part of a reasonable legislative scheme do not violate the equal protection clause. Barone, supra, 107 N.J. at 367, 526 A.2d 1055. In *492 fact, it has been pointed out that legislation imposing New Jersey No-Fault Law on out-of-state insurance companies that do not transact business in this State might very well violate other constitutional protections, in that New Jersey legislation would "construe" foreign state's insurance contracts as providing the coverage required under New Jersey law without the foreign company having any "ties" to this State.
As a side note however, this court is somewhat troubled with a scenario it foresees occurring in the future where an out-of-state insured subject to the verbal threshold pursuant to N.J.S.A. 17:28-1.4 in fact elected a "no threshold" option in a foreign state policy pursuant to foreign state law similar or identical to New Jersey law. The result under that scenario, where the insured would be deemed to have elected the "verbal threshold" option even though the "no threshold" option was actually elected, seem somewhat anomalous. However, that issue is not before this court as the plaintiff in this case had an unlimited right to sue for noneconomic loss under Pennsylvania law and Pennsylvania Law did not provide for the election of tort threshold options at the times relevant to this cause of action.

II. WHETHER THE PLAINTIFF'S ALLEGED INJURIES, IF PROVEN, MEET THE REQUIREMENTS OF ONE OF THE VERBAL-THRESHOLD CATEGORIES AS A MATTER OF LAW

Having determined that N.J.S.A. 17:28-1.4 is not unconstitutional as applied to the plaintiff, and therefore that plaintiff is subject to the verbal threshold requirements of N.J.S.A. 39:6A-8(a), this court must next address the defendant's cross-motion for summary judgment on the basis of that statute. As an interesting note, the defendant's cross-motion was filed prior to the New Jersey Supreme Court's ruling on Oswin v. Shaw, 129 N.J. 290, 609 A.2d 415 (1992), which has now provided guidance to lower courts as to the standard of review of a summary judgment motion on this issue. However, during oral argument *493 of the within motions, the parties had an opportunity to address the Oswin ruling and the applicability of this case to that holding.
As previously noted, N.J.S.A. 39:6A-8(a) precludes a person such as the plaintiff from recovering noneconomic loss as a result of bodily injury arising out of an automobile accident unless that person sustained a personal injury falling within at least one of nine categories. The categories of injuries set forth in N.J.S.A. 39:6A-8(a) are:
1. Death;
2. Dismemberment;
3. Significant disfigurement;
4. A fracture;
5. Loss of a fetus;
6. Permanent loss of use of a body organ, member, function system;
7. Permanent consequential limitation of use of a body organ or member;
8. Significant limitation of use of a body function or system; or
9. A medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment.
To support her cross motion for summary judgment on this basis, defendant relies upon the plaintiff's answers to interrogatories and attachments thereto which include medical reports of plaintiff's expert treating physicians. In opposition, the plaintiff provides his own certification as to how the injuries he alleges he sustained in the accident have affected his life.
In Oswin v. Shaw, 129 N.J. 290, 609 A.2d 415 (1992), the Supreme Court held "that the correct procedure for verbal-threshold cases follows the summary-judgment model  that is, the court decides whether the injury alleged would, if proven, meet the requirements of one of the verbal-threshold categories, and the jury decides factual disputes about the nature and extent of the plaintiff's injuries." Id. at 294, 609 A.2d at 417. The Oswin Court clarified the role of the judge as being "to determine whether there is a genuine issue as to a material fact, but not to decide the issue if he finds it to exist." Id. at *494 307, 609 A.2d at 423, citing with emphasis, Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 73, 110 A.2d 24 (1954). Once a court determines that evidence bearing on a plaintiff's injuries could, if believed by the factfinder, satisfy the verbal-threshold requirement, an issue of fact has been raised and must be decided by the jury. Id. 129 N.J. at 313, 609 A.2d at 426.
This is not to say that the mere subjective complaints of a plaintiff as to the alleged injuries are sufficient to defeat a motion for summary judgment. The Court in Oswin specifically rejected such an approach and emphasized:
"... that plaintiffs must submit objective, credible evidence that could support a jury finding in his or her favor. We respect the abilities of medical professionals to ascertain the presence of a genuine, disabling injury, but we nevertheless are satisfied that the Legislature sought to guard against a finding of "serious injury" when plaintiff's proofs are based solely on subjective complaints of pain."
[Id. at 319, 609 A.2d at 429.]
Thus, it is the obligation of this court to review the factual evidence before it to determine whether there is "objective, credible evidence" that could support a jury finding in plaintiff's favor that he has sustained a "serious injury" within the intent of N.J.S.A. 39:6A-8(a) (ie. that the plaintiff's injury falls within at least one of the nine categories of injuries set forth in the statute).
The factual evidence set forth by the defendant in support of the cross-motion for summary judgment is derived from the plaintiff's answers to interrogatories and attachments thereto which include the medical reports of treating physicians. The answers to interrogatories indicate that the accident in question occurred on June 16, 1989. As of June 18, 1991, the date plaintiff answered the interrogatories, Mr. Watkins indicated that he:
... still complains of pain and discomfort in his neck and upper back area, headaches related to pain and stiffness, and limitation of head and neck movement. Plaintiff asserts that said injury is a permanent consequential limitation of use of a body function or system and/or a significant limitation of use of a body function or system.
[Plaintiff's answer to interrogatory number four.]
*495 Moreover, plaintiff indicates that he did not lose any wages as a result of the accident, although he does indicate that he was out of work for one week, June 19 to June 23, 1989 due to the accident.
In support of his claim for injuries, plaintiff attached various medical reports of treating and examining physicians. There are three medical reports of Carl Kodroff, D.O. of Bustleton Medical Center in Philadelphia, Pennsylvania. Dr. Kodroff diagnosed the plaintiff's condition as: acute cervical and lumbar sprain and strain; sprain of left shoulder; and post traumatic cervical and lumbar somatic dysfunction. The plaintiff apparently received treatment consisting of "NSAID, along with Osteopathic Manipulative Therapy  Anatomotor" along with an "extensive physical therapy program". The physical therapy was administered by Sheldon Saffren, R.P.T. under the direction and instructions of Dr. Kodroff's group.
Mr. Watkins was referred by Dr. Kodroff to Frederick R. Struthers, D.O. in September of 1989 for a consultation. According to Dr. Struthers' September 13, 1989 report, the plaintiff's condition was diagnosed as cervical strain and sprain. Dr. Struthers recommended a "program of PT for massage, TENS, therapeutic exercise when the patient is able and heat or ice as indicated." Dr. Struthers also recommended that x-rays be taken in the event the plaintiff's neck pain persisted.
As of December 28, 1989, approximately six months after the accident, the plaintiff was determined by Dr. Kodroff to have "reached a satisfactory plateau of recovery" and active treatment by Dr. Kodroff's group was discontinued with instructions for the plaintiff to return should he have an exacerbation of his symptoms. The plaintiff never returned for treatment.
Moreover, the December 28, 1989 report of the physical therapist, Sheldon Saffren, P.T. indicated that "when first seen, the plaintiff had severe pain, spasm, and loss of range of motion in all cervical and lumbar spine and left shoulder movements". However, upon discharge in December, the plaintiff *496 had "achieved normal range of motion in all cervical and lumbar spine and left shoulder joint movements with only minimal pain intermittently."
In opposition to this motion, the only additional factual information presented by the plaintiff is his four page certification outlining how the injuries he sustained in the accident have had a severe adverse affect upon his life and present lifestyle. Specifically, plaintiff sets forth that for approximately 35 years, he had been very active in his hobby of antique automobile repair and restoration work. This work required him to be able to work under the frame and hood of a car, requiring total agility and ability to move and bend without restriction or pain. Plaintiff claims that he has had to stop completion of restoration work on a 1941 Cadillac due to the pain and discomfort he experiences in his neck and upper back areas as a result of the accident.
Mr. Watkins also contends that he has been caused to "reduce and almost stop all physical activities which (he) engaged in prior to the time of this accident, such as sports, dancing, house painting, house cleaning, roof repairing, lawn cutting, tree trimming, etc." The plaintiff forthrightly acknowledges that the claimed injuries he sustained do not affect his employment as he is a technical writer and utilizes "computer technology" in his daily work without any need for physical exertion.
Plaintiff relies upon Brown v. Puente, 257 N.J. Super. 203, 208-209, 608 A.2d 377 (App.Div. 1992) for the proposition that where there is a genuine dispute as to whether the verbal-threshold has been met, the disputed issue is to be determined at trial, not before trial, and by the jury, not the judge. While technically correct, this court must first determine whether the plaintiff has produced "objective, credible evidence" that the verbal-threshold has been met in order for the issue to be considered "disputed". Oswin, supra, 129 N.J. at 319, 609 A.2d at 429.
*497 It is clear that the injuries allegedly sustained by the plaintiff in this matter are "soft tissue injuries". While this does not necessarily bar the plaintiff from recovery under the verbal-threshold, the plaintiff is under an obligation to provide "objective proof of such injury and consequent disability". Id. at 319-320, 609 A.2d at 430. While it may be difficult for the plaintiff to provide such proof as "soft tissue" injuries are not apparent in X-rays, objective evidence including "swelling, discoloration, and spasm" if set forth would raise a genuine issue of material fact making summary judgment inappropriate. Ibid. This "object evidence" ordinarily will not include "range-of-motion" tests that are based only on patients' pain responses unless the restricted mobility is verified by physical examination and observation. Ibid.
Plaintiff, Martin H. Watkins has not set forth any objective, credible evidence that his alleged injuries are "serious" injuries (ie. fall within one of the nine categories set forth in N.J.S.A. 39:6A-8(a)). While apparently claiming that he has sustained injuries which meet the threshold categories of "permanent consequential limitation of use of a body organ or member" and/or "significant limitation of use of a body function or system", plaintiff relies solely upon his own subjective complaints of pain and "disability" in his hobbies and activities. Plaintiff's own treating physicians indicate that within six months of the accident he had "reached a satisfactory plateau of recovery".
Moreover, even if the range of motion tests performed by his physical therapist can be said to be "verified by physical examination and observation" and not merely subjective complaints of pain, Sheldon Saffren, R.P.T. indicated that upon discharge in December of 1989, Mr. Watkins had "achieved normal range of motion in all cervical and lumbar spine and left shoulder joint movements with only minimal pain intermittently." Other than the plaintiff's own subjective complaints, there is no evidence that the plaintiff has sustained any injury or *498 disability which would fall under any of the categories set forth in N.J.S.A. 39:6A-8(a).
It is interesting to contrast the facts of this case to that set forth in the most recent decision in Oswin. There, the Court found the plaintiff's treating physician's report "admirably specific in showing the degrees of limitation in six different types of movement" but noted that "those range-of-motion tests are not enough". Oswin, supra, 129 N.J. at 320, 609 A.2d at 430. The Court noted that the report did not "connect those limitations, nor Dr. Hila's objective findings, to any `permanent loss of use,' `permanent consequential limitation of use,' `or significant limitation of use.' As specific as are his findings on Oswin's injuries, his findings regarding the impact of those injuries amount to little more than a paraphrasing, in the most conclusory language, of the statutory requirements." Ibid. The Court found that because Oswin's injuries did not meet the statutory verbal-threshold requirement, she could not recover noneconomic damages from Shaw for those injuries. Ibid.
Nowhere in any of the reports provided to this court is there any discussion or connection asserted as to any "limitations" that have been experienced by Mr. Watkins. Neither is there any discussion or connection asserted as to any impact the alleged injuries have had upon the plaintiff in order to satisfy the statutory requirements.

III. CONCLUSION
The defendant's cross-motion for summary judgment is granted as N.J.S.A. 17:28-1.4 is not unconstitutional and the plaintiff is therefore deemed to have elected the verbal threshold. Plaintiff has failed to raise a genuine issue of material fact via objective, credible evidence that his alleged injuries fall within any of the categories set forth in N.J.S.A. 39:6A-8(a).