279 N.J. Super. 63 (1995)
652 A.2d 207
JOSEPH H. TAYLOR AND LOUISE TAYLOR, PLAINTIFFS-APPELLANTS,
v.
DANIEL RORKE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 1994.
Decided January 24, 1995.
*65 Before Judges MICHELS and KEEFE.
Martin J. Siegel, argued the cause for appellants Joseph H. Taylor and Louise Taylor (Doroshow & Pasquale, attorneys; Mr. Siegel, of counsel and on the brief).
Michael T. Novick, argued the cause for respondent Daniel Rorke (Perlow, Sebera & Pescatore, attorneys; Mr. Novick, of counsel and on the brief).
Deborah T. Poritz, Attorney General of New Jersey, attorney for Intervenor State of New Jersey (Joseph L. Yannoti, Assistant *66 Attorney General, of counsel and Lisa R. Levine, Deputy Attorney General, on the letter brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiffs Joseph H. Taylor and Louise Taylor appeal from a summary judgment of the Law Division that dismissed their personal injury tort action against defendant Daniel Rorke. Plaintiffs sought to recover non-economic losses sustained by plaintiff Joseph H. Taylor as a result of an automobile accident. The trial court dismissed the action because plaintiffs failed to satisfy the verbal threshold requirements of the New Jersey Automobile Reparation Reform Act codified under N.J.S.A. 39:6A-1 et seq. (Commonly referred to as our No-Fault Law). At issue is whether N.J.S.A. 17:28-1.4, often referred to as "The Deemer Statute," violates the Privileges and Immunities Clause of the United States Constitution.
Joseph Taylor was injured when the automobile that he was driving was struck by a vehicle driven by defendant. At the time of the accident, Joseph Taylor was a domiciliary of the state of North Carolina and was driving his North Carolina registered and insured automobile. As a result of the accident, Joseph Taylor suffered soft tissue injuries to his cervical spine and back. It was conceded at trial that his injuries were not of sufficient severity to pierce the verbal threshold of N.J.S.A. 39:6A-8a.
Defendant moved for summary judgment on the ground that plaintiffs were subject to the verbal threshold requirements of our No-Fault Law in accordance with N.J.S.A. 17:28-1.4, and, therefore, they were barred from proceeding with their claims. Plaintiffs responded by challenging the constitutionality of N.J.S.A. 17:28-1.4. They argued that they should not be subject to the verbal threshold requirements of the No-Fault Law because the application of the statute to their claims would violate the Privileges and Immunities Clause of the United States Constitution. The trial court disagreed and granted summary judgment in favor *67 of defendant, holding that plaintiffs, as out-of-state residents insured by an insurance company authorized to do business in New Jersey, were deemed to be subject to the verbal threshold requirements of our No-Fault Law pursuant to N.J.S.A. 17:28-1.1. And, since they failed to satisfy the requirements under that statute, they could not maintain this action.
The sole issue raised by plaintiffs is whether N.J.S.A. 17:28-1.4 violates the Privileges and Immunities Clause of the United States Constitution, and is therefore unconstitutional. In order to resolve this issue, it is necessary to understand the New Jersey no-fault insurance statute and the interpretation and application of the Privileges and Immunities Clause.
Under New Jersey's current insurance scheme, with respect to non-economic injuries, New Jersey residents must choose between the more expensive "full coverage" option, or the less expensive "verbal threshold" option. Dyszel v. Marks, 6 F.3d 116 (3d Cir.1993). Nonresidents are also subject to our No-Fault Law. N.J.S.A. 17:28-1.4, applies where an out-of-state driver or vehicle is involved in an automobile accident in New Jersey, and expressly provides:
Any insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, or controlling or controlled by, or under common control by, or with, an insurer authorized to transact or transacting insurance business within this State, which sells a policy providing automobile or motor vehicle liability insurance coverage, or any similar coverage, in any other state or in any province of Canada, shall include in each policy coverage to satisfy at least the liability insurance requirements of ... 39:6B-1 or ... 39:6A-3, the uninsured motorist insurance requirements of ... 17:28-1.1, and personal injury protection benefits coverage pursuant to 39:6A-4, whenever the automobile or motor vehicle insured under the policy is used or operated in this State.
Any liability insurance policy subject to this section shall be construed as providing the coverage required herein, and any named insured, and any immediate family member as defined in ... 39:6A-8.1, under that policy, shall be subject to the tort option specified in ... 39:6A-8.
N.J.S.A. 17:28-1.4 requires any insurer authorized to transact business in New Jersey to include New Jersey personal injury protection (PIP) coverage in a policy which is sold in another state whenever the automobile insured under the policy is operated in *68 New Jersey. Adams v. Keystone Ins. Co., 264 N.J. Super. 367, 371, 624 A.2d 1008 (App.Div. 1993). At the same time, N.J.S.A. 17:28-1.4:
limits the right of non-residents of New Jersey to sue for non-economic (pain and suffering) loss by automatically assigning the so called verbal threshold tort option under N.J. Stat. Ann. § 39:6A-8(a) to out-of-state residents involved in accidents occurring in the State of New Jersey, solely on the basis of whether their automobile (auto) insurance carrier is authorized to transact business in the State of New Jersey.
[Dyszel v. Marks, supra, 6 F.3d at 119].
Plaintiffs contend that this statute is unconstitutional because nonresidents do not have the ability, as New Jersey residents do, to elect whether or not to be subject to the verbal threshold. Therefore, the automatic assignment of the verbal threshold option to nonresidents constitutes discrimination against nonresidents, violating the Privileges and Immunities Clause of the United States Constitution. We disagree.
The Privileges and Immunities Clause contained in U.S. Const. art. IV, § 2, cl. 1 reads as follows:
The citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.
This clause prevents states from discriminating against out-of-state individuals. It was "designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." Toomer v. Witsell, 334 U.S. 385, 395, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460, 1471, reh'g denied, 335 U.S. 837, 69 S.Ct. 12, 93 L.Ed. 389 (1948). The clause is an attempt to "help fuse into one Nation a collection of independent, sovereign States." Ibid. Although the Privileges and Immunities Clause speaks to citizens of other states, practically, it bars discrimination against nonresidents. See Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201, reh'g denied, 410 U.S. 959, 93 S.Ct. 1410, 35 L.Ed.2d 694 (1973). However, "[o]nly with respect to those `privileges' and `immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally." Baldwin v. Montana Fish and Game Comm'n, 436 U.S. 371, 383, 98 S.Ct. 1852, 1860, 56 L.Ed.2d 354, 365 (1978). See also *69 United Building & Constr. Trades v. Mayor, 465 U.S. 208, 218, 104 S.Ct. 1020, 1027, 79 L.Ed.2d 249, 258 (1984). In addressing the Privileges and Immunities Clause, the United States Supreme Court explicitly held that only certain "fundamental rights" are protected by the Privileges and Immunities Clause. See Baldwin, supra, 436 U.S. at 395, 98 S.Ct. at 1866, 56 L.Ed.2d at 372-73.
In Baldwin, supra, plaintiffs, who were nonresidents of Montana, challenged a Montana scheme which issued hunting licenses to Montana residents for $30, while nonresidents were charged $225. Plaintiffs contended that the difference in fee prices constituted a violation of the Privileges and Immunities Clause, since the price differential discriminated against nonresidents. The Supreme Court rejected this argument, holding that the Privileges and Immunities Clause applies only to distinctions between nonresidents and residents with respect to "such basic and essential activities, interference with which would frustrate the purposes of the formation of the Union." Id. 436 U.S. at 387, 98 S.Ct. at 1862, 56 L.Ed.2d at 368. The Supreme Court decided that an activity must "bear ... upon the vitality of the Nation as a single entity" before discrimination with respect to it will trigger the Clause. Id. 436 U.S. at 383, 98 S.Ct. at 1860, 56 L.Ed.2d at 365. The Court stated, "[w]hatever rights or activities may be `fundamental' under the Privileges and Immunities Clause, we are persuaded, and hold, that elk hunting by nonresidents in Montana is not one of them." Id. 436 U.S. at 388, 98 S.Ct. at 1863, 56 L.Ed.2d at 368.
Legislation struck down by the United States Supreme Court as violating the Privileges and Immunities Clause, were those the Supreme Court considered to be "fundamental interests." The Supreme Court has held "fundamental" interests to encompass only those rights involving important commercial activities or civil liberties. See Supreme Court of Virginia v. Friedman, 487 U.S. 59, 70, 108 S.Ct. 2260, 2267, 101 L.Ed.2d 56, 67 (1988) (holding that a statute requiring state residency in order to be licensed to practice law within the state was unconstitutional); Supreme Court of New Hampshire v. Piper, 470 U.S. 274, 288, 105 S.Ct. *70 1272, 1280, 84 L.Ed.2d 205, 216 (1985) (holding that the right to practice law is a sufficiently important and "fundamental" right, that this privilege may not be limited to state residents); Hicklin v. Orbeck, 437 U.S. 518, 526, 98 S.Ct. 2482, 2488, 57 L.Ed.2d 397, 405 (1978) (holding that a state law requiring private sector employers to give hiring preference to residents absent a closely related substantial justification is unconstitutional); Austin v. New Hampshire, 420 U.S. 656, 665-66, 95 S.Ct. 1191, 1197, 43 L.Ed.2d 530, 537-38 (1975) (holding that a state income tax only on nonresidents who earn money within the state was unconstitutional); Toomer v. Witsell, supra, 334 U.S. at 402, 68 S.Ct. at 1165, 92 L.Ed. 1474 (holding that statute charging nonresident commercial fisherman substantially more for commercial fishing license than resident commercial fishermen was unconstitutional).
Application of the Privileges and Immunities Clause is quite limited.
Like many other constitutional provisions, the privileges and immunities clause is not an absolute. It does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States. But it does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it. Thus the inquiry in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them. The inquiry must also, of course, be conducted with due regard for the principle that the States should have considerable leeway in analyzing local evils and in prescribing appropriate cures.
[Toomer v. Witsell, supra, 334 U.S. at 396, 68 S.Ct. at 1162].
Following Toomer v. Witsell, supra, in Supreme Court of Virginia v. Friedman, supra, the Supreme Court laid out a two-step inquiry to determine whether a statute violates the Privileges and Immunities Clause. First, the activity in question must be sufficiently basic to the livelihood of the nation, so as to fall within the purview of the Privileges and Immunities Clause. Id. 487 U.S. at 64, 108 S.Ct. at 2264, 101 L.Ed.2d at 63. Secondly, if the challenged restriction deprives nonresidents of a protected privilege, the court will invalidate it only if it concludes that the restriction is not closely related to the advancement of a substantial *71 state interest. Id. 487 U.S. at 65, 108 S.Ct. at 2264, 101 L.Ed.2d at 63.
Regarding the first step, it is clear that the right to sue for non-economic damages is not an activity which is "basic to the livelihood of the nation." The statute does not prohibit nonresidents from recovering for injuries sustained in an auto accident in New Jersey. Rather, the statute provides protection for these individuals, subject to the limits of the verbal threshold.
Even if we were to go beyond this first step and reach the second step, N.J.S.A. 17:28-1.4 is closely related to the advancement of a substantial state interest. N.J.S.A. 17:28-1.4 advances the State's interest in compensating individuals with economic losses, while not raising the cost of automobile insurance. As stated in Watkins v. Davis, 259 N.J. Super. 482, 614 A.2d 189 (Law Div. 1992), aff'd 268 N.J. Super. 211, 633 A.2d 112 (App.Div. 1993), the statute has several substantial state interests, including to "(1) lower the insurance premiums of New Jersey insureds; (2) materially reduce the number of auto-related personal injury cases litigated in the courts; [and] (3) make no-fault PIP benefits available to all people injured in automobile accidents in New Jersey without raising the general level of premiums ..." Id. 259 N.J. Super. at 491, 614 A.2d 189.
There is little doubt that the right to sue for non-economic damages is not a "fundamental activity whose restriction would hinder the formation, the purpose, or the development of a single union," and thus, we have no hesitancy in concluding that N.J.S.A. 17:28-1.4 does not violate the Privileges and Immunities Clause. See Baldwin, supra, 436 U.S. at 383, 98 S.Ct. at 1860, 56 L.Ed.2d at 365; In re Professional Ethics Advisory Comm. Op. 475, 89 N.J. 74, 93, 444 A.2d 1092 appeal dismissed sub nom., Jacoby & Meyers v. Supreme Court of New Jersey, 459 U.S. 962, 103 S.Ct. 285, 74 L.Ed.2d 272 (1982); Salorio v. Glaser, 82 N.J. 482, 414 A.2d 943 cert. denied, 449 U.S. 804, 101 S.Ct. 49, 66 L.Ed.2d 7 (1980).
*72 Further, it is well-settled that an adequate factual basis for legislative judgment is presumed to exist. United States v. Carolene Products Co., 304 U.S. 144, 152, 58 S.Ct. 778, 783, 82 L.Ed. 1234, 1241 (1938). There is a strong presumption in favor of the constitutionality of a statute. State Farm v. State, 124 N.J. 32, 45-46, 590 A.2d 191 (1991); David v. Vesta Co., 45 N.J. 301, 315, 212 A.2d 345 (1965). And, the power to declare a statute void is "to be delicately exercised unless the statute is clearly repugnant to the Constitution." Barone v. Department of Human Services, 107 N.J. 355, 369, 526 A.2d 1055 (1987). See Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. and Const. Trades Council, 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645, 654 (1988).
Armed with these principles, several courts have rejected constitutional challenges to N.J.S.A. 17:28-1.4 on equal protection, contract clause, due process and choice of law grounds. For example, in Watkins v. Davis, supra, we had to decide whether N.J.S.A. 17:28-1.4 impinged on any "fundamental right" of nonresidents for equal protection purposes. We held that the statute's requiring insurers of automobiles belonging to nonresidents to provide nonresidents with the minimum coverage to satisfy state requirements of liability, uninsured motorist, and personal injury protection, whenever such automobile was used or operated in state, did not impinge upon a fundamental right for equal protection purposes.
In Adams, supra, we upheld the constitutionality of N.J.S.A. 17:28-1.4, finding:
a state, like New Jersey, has a legitimate interest in its insurance scheme. The Legislature has made a policy judgment to solve the insurance crisis, and the legislation strikes an appropriate balance. Nonresident insureds must meet a reasonable threshold in order to receive payment for non-economic loss. In return, non-residents insured by companies transacting business in New Jersey who are injured in New Jersey receive the benefits necessary to provide for their medical treatment. In addition, New Jersey has an interest in ensuring that persons injured in this state receive prompt and proper medical care and in assuring that the medical care facilities and practitioners who provide such care will be paid. The subject statute, designed to lower automobile insurance premiums while ensuring generous PIP benefits, simply furthers the policy objective of N.J.S.A. 39:6A-1 to -35, which is both fair and rational.
[Adams, supra, 264 N.J. Super. at 378, 624 A.2d 1008].
*73 In Dyszel v. Marks, supra, the Third Circuit Court of Appeals held our Deemer statute to be constitutional. The Circuit Court found that it was rationally related to legitimate purposes, and expressly held that the New Jersey Legislature:
was entitled to decide that, in general, it was desirable (a) to provide compensation for all accident victims for basic types of economic losses, without fault, (b) to fund such compensation through the auto insurance system and (c) to offset the cost of providing such compensation by curtailing the rights of those suffering less serious injuries to recover in tort for non-economic losses, thereby eliminating both compensation for such losses and substantial legal fees and other loss adjustment expenses which would be necessary to process and resolve claims for such compensation.
[Id. at 126].
In discussing N.J.S.A. 17:28-1.4, and the equal protection challenge which it faced, the Third Circuit Court also stated, "[t]he Judiciary's power to declare such a statute void must be delicately exercised unless the statute is clearly repugnant to the Constitution." Id. at 125.
N.J.S.A. 17:28-1.4 does not serve the function of cutting off nonresident motorists' rights to compensation for injuries. Rather, it limits those rights, prohibiting them from recovering for injuries that do not satisfy the verbal threshold requirements of our No-Fault Law. Nonresidents, such as plaintiffs here, "are treated just like any other insured who has not contributed to funding the supplemental no threshold compensation system: they are afforded basic no-fault and tort rights, subject to the verbal threshold. The only disparity of which a plaintiff could possibly complain is that he or she is not given the opportunity to elect no threshold coverage and to contribute to the funding of that system. This disparity does not violate either the Unites States or the New Jersey Constitutions." Dyszel v. Marks, supra, 6 F.3d at 126.
In sum, New Jersey has a legitimate interest in its insurance scheme and the ability of nonresidents to sue for non-economic damages does not constitute a fundamental right. Consequently, *74 we hold that N.J.S.A. 17:28-1.4 does not violate the Privileges and Immunities Clause of the United States Constitution.
Accordingly, the summary judgment under review is affirmed.