687 A.2d 738

LOUIS SCOTT WHITAKER AND LAURA WHITAKER, HIS WIFE, PLAINTIFFS–RESPONDENTS AND CROSS–APPELLANTS, v. RONALD A. DEVILLA, ROMEO A. DEVILLA, DEFENDANTS– APPELLANTS AND CROSS–RESPONDENTS, AND JOHN DOE NOS. 1–10 (FICTITIOUS PERSONS) AND ABC CORP. NOS. 1–10 (FICTITIOUS ENTITIES), DEFENDANTS, AND ATTORNEY GENERAL OF NEW JERSEY, INTERVENOR–APPELLANT AND CROSS–RESPONDENT.

Argued November 18, 1996—Decided February 3, 1997.

342

*Karen L. Suter,* Deputy Attorney General, argued the cause, for intervenor-appellant and cross-respondent, Attorney General of New Jersey (*Peter G. Verniero,* Attorney General, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Carla D. Williams,* Deputy Attorney General, on the briefs).

*Michael D. Blythe,* argued the cause, for appellants and cross-respondents Ronald A. DeVilla and Romeo A. DeVilla (*Michael D. Blythe & Associates,* attorneys; *Lisa A. Miller,* on the briefs).

*Eugene M. Purcell,* argued the cause, for respondents and cross-appellants Louis Scott Whitaker and Laura Whitaker, etc. (*Purcell, Ries, Shannon, Mulcahy & O'Neill,* attorneys; *Mr. Purcell* and *Kathleen J. Devlin,* on the briefs).

*Thomas P. Weidner,* argued the cause, for *amicus curiae,* State Farm Indemnity Company (*Jamieson, Moore, Peskin & Spicer,* attorneys; *Mr. Weidner* and *Ross A. Lewin,* of counsel; *Mr. Weidner, Ross A. Lewin* and *Michael G. Petrone,* on the brief).

The opinion of the Court was delivered by

STEIN, J.

The critical issues in this appeal concern the proper interpretation, as well as the constitutionality, of *N.J.S.A.* 17:28–1.4, New Jersey's so-called "deemer" statute. That statute deems New Jersey's "verbal threshold," which allows automobile accident tort recovery for non-economic losses only for bodily injury of a type or degree within one of the nine defined categories set forth in *N.J.S.A.* 39:6A–8a, to apply to the policies of out-of-state residents using their automobiles in New Jersey if their insurers are authorized to do business in New Jersey. A secondary issue, assuming that the deemer statute is constitutional and applies to plaintiffs' claim, is whether the injuries sustained by plaintiff Louis Whitaker satisfy the verbal threshold.

In a reported opinion, 287 *N.J.Super.* 370, 671 *A.*2d 163 (1996), the Appellate Division agreed with the trial court that plaintiff's injuries did not satisfy the requirements of the verbal threshold. *Id.* at 372, 671 *A.*2d 163. However, the Appellate Division reversed the trial court's grant of summary judgment and remanded for further proceedings, concluding that the language of the deemer statute inadvertently was overbroad and was not intended to restrict plaintiff's right to recover for non-economic damages. *Id.* at 374, 671 *A.*2d 163. The Appellate Division declined to

address the constitutionality of the deemer statute as applied to plaintiff. *Id.* at 373, 671 *A.*2d 163.

We granted the State's and defendants' petition for certification, and plaintiffs' cross-petition challenging both the constitutionality of the deemer statute and the lower courts' conclusion that plaintiff's injuries did not satisfy the verbal threshold. 145 *N.J.* 373, 678 *A.*2d 714 (1996). We reverse.

I

On June 29, 1992, plaintiff stopped his automobile behind a car making a left turn from the eastbound lane of Route 518 in Montgomery Township, a Somerset County municipality. Defendant Ronald DeVilla was driving a vehicle owned by defendant Romeo DeVilla eastbound on Route 518. That automobile collided with the rear of plaintiff's automobile.

Plaintiff and his wife reside in Pennsylvania and are insured under a Pennsylvania automobile insurance policy issued by Prudential Property and Casualty Insurance Company, an insurer authorized to do business in New Jersey. Pursuant to Pennsylvania law, which requires automobile insurance companies to provide both "full tort" and verbal threshold options, 75 *Pa. Cons.Stat. Ann.* § 1705(a)(1), plaintiff elected the full tort option in his automobile insurance policy.

As a result of the accident plaintiff experienced stiffness in his shoulders, neck, and back, causing him to miss seventeen hours of work during the week following the accident. He was treated initially with pain medication and a cervical collar. On the advice of an orthopedist plaintiff received physical therapy treatments from June to August of 1992. From October 1992 to November 1993, plaintiff was seen regularly by Dr. Daniel Brainum, a chiropractor. He determined that plaintiff's cervical range of motion was restricted, and that plaintiff experienced muscle spasms in the cervical, dorsal, and lumbar regions. He concluded that plaintiff's injuries were attributable to lumbosacral sprain/strain, sacroiliac instability, cervical myofascitis, and cervical hypo-

lordosis. He described plaintiff's condition as permanent, observing that his long-term prognosis was good with proper care. Plaintiff's last visit with Dr. Brainum occurred in November 1993.

When plaintiff was deposed in August 1994, he complained of back pain after physical exertion, and back and neck stiffness after driving for extended periods. He acknowledged that there were no activities that he engaged in prior to the accident in which he was then unable to engage, but noted that he experienced pain and discomfort when engaging in heavy lifting, or in other specific activities such as waterskiing, snow skiing, and digging holes. Plaintiff stated his intention to participate in a basketball league beginning in October 1994.

In opposition to defendants' motion for summary judgment, plaintiff relied on Dr. Brainum's final report and on the October 1994 report of plaintiff's experts, Drs. William Tevlin and David Meyers. That report, based on an examination in September 1994, indicated that plaintiff continued to experience tenderness and muscle spasm in the posterior cervical musculature and in the lumbar area, that plaintiff has decreased flexion in the head, decreased extension during bending and twisting, and decreased ability to raise his legs. The report concluded that the prognosis for plaintiff's improvement was limited because his injuries "are precursors to progressive traumatic arthritis in the areas injured."

The trial court granted defendants' motion for summary judgment, determining that the deemer statute applied to plaintiff's suit and upholding the statute's constitutionality, citing *Taylor-Segan v. Rajagopal*, 275 *N.J.Super.* 286, 645 *A.*2d 1272 (App.Div. 1994). The court also concluded that plaintiff had not adequately supported a claim for relief under the verbal threshold, observing that plaintiff relied primarily on the report of his experts rather than on the determination of his treating physician, and noting that the medical experts' finding that plaintiff's injuries were permanent was inadequately supported by the record.

The Appellate Division agreed with the trial court's conclusion that plaintiff had failed to satisfy the verbal threshold. 287

*N.J.Super.* at 372, 671 *A.*2d 163. Nevertheless, the panel reversed the trial court's grant of summary judgment, concluding that the language in the deemer statute was "inadvertently overbroad and was not intended to restrict the rights of persons such as the present plaintiffs." *Id.* at 374, 671 *A.*2d 163. The court observed:

There is no basis shown in the present case to distinguish between a New Jersey resident who pays a New Jersey insurance company for "no threshold" coverage and an out-of-state resident who opts for substantially the same coverage with the same insurance company.

In any event, the result would be anomalous. Consider next-door neighbors living just over the border in a contiguous state. One pays for "no threshold" coverage with an insurance company authorized to do business in New Jersey, while his neighbor obtains his insurance from a company not so authorized, and does not pay for the greater coverage. If the Deemer provision is interpreted as applying to the first, he cannot recover for non-economic damages if he is injured in an automobile accident occurring here, but his neighbor, who has not paid the greater premium can recover non-economic loss without regard to the verbal threshold. We can not attribute so absurd and unnecessary an intention to our Legislature, particularly where the New Jersey authorized insurance company can probably control the optional premium for the "no threshold" coverage just as easily as it does with a New Jersey resident.

[*Ibid.*]

## II

The deemer statute, first enacted in 1985, *L.* 1985, *c.* 520, § 18, and subsequently amended in 1988, *L.* 1988, *c.* 119, § 1 (codified as amended at *N.J.S.A.* 17:28–1.4), provides as follows:

Any insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, or controlling or controlled by, or under common control by, or with, an insurer authorized to transact or transacting insurance business in this State, which sells a policy providing automobile or motor vehicle liability insurance coverage, or any similar coverage, in any other state or in any province of Canada, shall include in each policy coverage to satisfy at least the liability insurance requirements of section 1 of P.L.1972, c. 197 (C. 39:6B–1) or section 3 of P.L.1972, c. 70 (C. 39:6A–3), the uninsured motorist insurance requirements of subsection a. of section 2 of P.L.1968, c. 385 (C. 17:28–1.1), and personal injury protection benefits coverage pursuant to section 4 of P.L.1972, c. 70 (C. 39:6A–4) or of section 19 of P.L.1983, c. 362 (C. 17:28–1.3), whenever the automobile or motor vehicle insured under the policy is used or operated in this State.

Any liability insurance policy subject to this section shall be construed as providing the coverage required herein, and any named insured, and any immedi-

ate family member as defined in section 14.1 of P.L.1983, c. 362 (C. 39:6A–8.1), under that policy, shall be subject to the tort option specified in subsection a. of section 8 of P.L.1972, c. 70 (C. 39:6A–8).

By its terms the statute requires insurers authorized to transact motor vehicle insurance business in New Jersey to include in motor vehicle liability policies sold in any other state or in Canada policy coverage for the insured vehicle such as to assure that if that vehicle is operated in New Jersey the policy will provide the minimum liability coverage, uninsured motorist coverage, and personal injury protection coverage that the insurer would be obligated to provide to a New Jersey insured. Thus, irrespective of the minimum insurance requirements of the insured's state, the deemer statute guarantees that if the insured's vehicle is operated in New Jersey the insurer will provide liability coverage of not less than $15,000 on account of injury to, or death of, one person in any one accident, coverage of not less than $30,000 on account of injury to or death of more than one person in any one accident, and coverage of not less than $5000 for damage to property in any one accident. See *N.J.S.A.* 39:6B–1, 39:6A–3. In addition, the deemer statute guarantees the out-of-state insured uninsured motorist coverage in the same limits as are required for liability coverage. See *N.J.S.A.* 17:28–1.1a. Finally, the deemer statute guarantees that out-of-state insureds driving in New Jersey and insured by companies authorized to transact insurance business in New Jersey have available up to $250,000 in personal injury protection (PIP) benefits, see *N.J.S.A.* 39:6A–4, irrespective of the comparable benefits mandated by the insured's home state.

When the deemer statute was enacted in 1985, *N.J.S.A.* 39:6A–8 required New Jersey insureds to elect one of two tort options. Subsection (a) of that statute described the less restrictive tort option that limited the right of insureds to recover non-economic losses for soft tissue bodily injuries arising from automobile accidents to those injuries for which the reasonable and necessary medical expenses for treatment exceeded $200. Subsection (b) of *N.J.S.A.* 39:6A–8 defined the more restrictive tort option, which required that the reasonable and necessary medical expenses for

treatment of such soft tissue bodily injuries exceed $1500 before the right to sue for non-economic damages would accrue. *See L.* 1983, *c.* 362, § 14. In its original form, the deemer statute provided that all policies issued to out-of-state residents by insurers subject to the statute would be deemed to include the more restrictive tort option defined in *N.J.S.A.* 39:6A–8b. *See L.* 1985, *c.* 520, § 18.

Because the $200 and $1500 alternative monetary thresholds for soft-tissue injury suits did not succeed in containing the rising cost of automobile insurance, see *Oswin v. Shaw,* 129 *N.J.* 290, 296, 609 *A.*2d 415 (1992), the Legislature in 1988 enacted the current statute, *L.* 1988, *c.* 119, § 6 (codified at *N.J.S.A.* 39:6A–8), which affords motorists the option of electing a "verbal threshold," allowing recovery for non-economic losses resulting only from those automobile accident personal injuries that fit into one of nine specified categories, *N.J.S.A.* 39:6A–8a. The alternative choice is the traditional fault liability system that allows unrestricted recovery of non-economic damages, an option for which insureds pay a higher premium than they would pay for a policy subject to the verbal threshold. *N.J.S.A.* 39:6A–86. If no election is made, the insured is deemed subject to the verbal threshold. *Oswin, supra,* 129 *N.J.* at 297, 609 *A.*2d 415.

The statute that authorized insureds to choose between the full tort option and the verbal threshold also amended· the deemer statute. See *L.* 1988, *c.* 119, § 1 (codified at *N.J.S.A.* 17:28–1.4). That amendment provided that automobile insurance policies sold to out-of-state residents by insurers authorized to transact insurance business in New Jersey would be deemed to be subject to the verbal threshold if the automobile were operated in New Jersey. *N.J.S.A.* 17:28–1.4.

Prior to the Appellate Division decision under review, courts confronted with challenges to the deemer statute have applied it literally and upheld its constitutionality. *Murphy v. Allstate Ins. Co.,* 252 *N.J.Super.* 280, 599 *A.*2d 916 (App.Div.1991), although not directly implicating the deemer statute, applied and upheld the

constitutionality of an analogous provision of the verbal threshold statute then in effect. The plaintiffs, who neither owned an automobile nor resided in the household of an immediate family member who owned an automobile, sustained minor injuries in an automobile accident in March 1989. *Id.* at 283, 599 *A.*2d 916. At the time of the accident, *N.J.S.A.* 39:6A–8 and –8.1 provided that persons who neither owned an automobile nor lived in the household of an immediate family member that owned one would be deemed to have elected the verbal threshold option for purposes of determining their right to recover noneconomic damages for injuries sustained in automobile accidents. See *L.* 1988, *c.* 119, § 6. Plaintiffs challenged those statutory provisions, alleging that they denied plaintiff equal protection of the law because, unlike automobile owners that could elect the full tort option, plaintiffs were eligible only for the verbal threshold option. *Murphy, supra,* 252 *N.J.Super.* at 283, 599 *A.*2d 916. The Law Division held that the challenged provisions were unconstitutional. *Ibid.* Reversing, the Appellate Division concluded that the statutory provisions in question were rationally related to a comprehensive state interest:

> We identify a more comprehensive state interest. In our view the state interest was to make no-fault PIP benefits available to all people injured in automobile accidents without raising the general level of automobile insurance premiums. The Legislature attempted to accomplish this goal by relieving insurers from having to pay noneconomic damages to people not seriously injured. Insureds who elect to recover for minor injuries have to pay an added premium for themselves and household members of their immediate family. PIP beneficiaries such as plaintiffs cannot make such an election because they do not buy automobile insurance and are not part of the household of an immediate family member who does. Although the Legislature probably could devise a means for people in plaintiffs' class to buy no-threshold coverage, as a matter of administrative convenience the Legislature instead deemed them subject to the verbal threshold.
>
> Imperfect classifications that are part of a reasonable legislative scheme do not violate the equal protection clause.
>
> [*Id.* at 285–86, 599 *A.*2d 916 (citation omitted).]

In *Adams v. Keystone Insurance Co.,* 264 *N.J.Super.* 367, 624 *A.*2d 1008 (App.Div.1993), Adams, a Delaware resident, was driving his Ford van in New Jersey and sustained injuries in an accident with a tractor-trailer. *Id.* at 369, 624 *A.*2d 1008. Adams was the named insured on the Ford's liability policy issued by

Keystone Insurance Company, an insurer authorized to transact business in New Jersey. *Ibid.* Relying on the deemer statute, Adams demanded that Keystone pay him PIP benefits in excess of the $15,000 provided for in the Delaware policy. When Keystone refused, Adams instituted suit. *Ibid.* Keystone moved for summary judgment, contending that *N.J.S.A.* 17:28–1.4 should not be construed to require Keystone to pay additional PIP benefits to non-resident insureds, and also challenging the constitutionality of the deemer statute. *Id.* at 370, 624 *A.*2d 1008. The Law Division granted Keystone's summary judgment motion. The Appellate Division reversed, concluding that the plain language of the deemer statute authorized plaintiff to receive PIP coverage up to the limits afforded to New Jersey insureds. *Id.* at 371, 624 *A.*2d 1008. The Appellate Division also rejected Keystone's due process challenge to the validity of the deemer statute:

> The rationale of these cases is that a state, like New Jersey, has a legitimate interest in its insurance scheme. The Legislature has made a policy judgment to solve the insurance crisis, and the legislation strikes an appropriate balance. Non-resident insureds must meet a reasonable threshold in order to receive payment for non-economic loss. In return, non-residents insured by companies transacting business in New Jersey who are injured in New Jersey receive the benefits necessary to provide for their medical treatment. In addition, New Jersey has an interest in ensuring that persons injured in this state receive prompt and proper medical care and in assuring that the medical care facilities and practitioners who provide such care will be paid. The subject statute, designed to lower automobile insurance premiums while ensuring generous PIP benefits, simply furthers the policy objective of *N.J.S.A.* 39:6A–1 to –35, which is both fair and rational.
>
> [*Id.* at 377–78, 624 *A.*2d 1008.]

*Watkins v. Davis,* 259 *N.J.Super.* 482, 614 *A.*2d 189 (Law Div.1992), *aff'd,* 268 *N.J.Super.* 211, 633 *A.*2d 112 (App.Div.1993), was the first case to challenge the deemer statute's application of the verbal threshold to a non-resident plaintiff. *Id.* at 485–86, 614 *A.*2d 189. Watkins, a Pennsylvania resident, was operating his vehicle in New Jersey and sustained personal injuries when his vehicle was struck in the rear by defendant's automobile. Watkins was insured through a Pennsylvania liability policy issued by Aetna Life and Casualty Company, an insurer authorized to transact business in New Jersey. *Id.* at 486, 614 *A.*2d 189. When

Watkins sued to recover damages for his injuries, defendant asserted Watkins's failure to satisfy the verbal threshold as a separate defense. *Ibid.* Watkins then moved to strike that defense, asserting that the deemer statute was unconstitutional under the Equal Protection Clause, *U.S. Const.* amend. XIV, § 1, because non-residents whose insurance companies are unauthorized to transact business in New Jersey are not subject to the verbal threshold. *Id.* at 486–88, 614 *A.*2d 189. The Law Division upheld the statute's constitutionality:

> *N.J.S.A.* 17:28–1.4 not only subjects the class in question to the "verbal threshold" of *N.J.S.A.* 39:6A–8.1(a), it construes the "out-of-state" policy as providing the more expansive coverage required under New Jersey No–Fault Law (ie. [sic] liability insurance requirements, uninsured motorist insurance requirements, and personal injury protection benefits coverage). There is a rational basis for imposing upon this class the verbal threshold, even though they do not have the opportunity to elect the "no-threshold", as these individuals are receiving the benefit of a more comprehensive series of benefits without regard to fault under New Jersey law.
>
> Plaintiff's argument that the statute does not affect out-of-state drivers whose insurance companies do not transact business in New Jersey, while accurate, does not dictate a finding that the classification in question is unconstitutional. While still having the ability to pursue their noneconomic losses in the New Jersey courts, these out-of-state drivers do not receive the benefit of New Jersey No–Fault Law outlined above. Moreover, imperfect classifications that are part of a reasonable legislative scheme do not violate the equal protection clause.
>
> [259 *N.J.Super.* at 491, 614 *A.*2d 189.]

Other Appellate Division panels have also rejected constitutional challenges to the provision of the deemer statute imposing the verbal threshold on non-resident insureds. In *Taylor v. Rorke,* 279 *N.J.Super.* 63, 652 *A.*2d 207 (App.Div.), *certif. denied,* 141 *N.J.* 99, 660 *A.*2d 1197 (1995), the Appellate Division rejected the out-of-state plaintiff's contention that the deemer statute violated the Privileges and Immunities Clause of the United States Constitution, *U.S. Const.* art. IV, § 2, because non-residents are denied the opportunity to elect the full tort option afforded to New Jersey residents. Noting that the right to sue for non-economic damages is not an activity "basic to the livelihood of the nation," *Taylor, supra,* 279 *N.J.Super.* at 71, 652 *A.*2d 207, the court determined that the constitutional challenge was meritless because the deemer

statute was "closely related to the advancement of a substantial state interest" in containing the cost of automobile insurance. *Ibid.* Similarly, in *Taylor–Segan v. Rajagopal, supra,* the Appellate Division rejected an equal protection challenge to the deemer statute asserted by a Pennsylvania resident who had elected the full tort option in her Pennsylvania automobile liability policy and was confronted in her suit for non-economic damages arising out of a New Jersey collision with a summary judgment motion based on the verbal threshold. Reversing the Law Division's denial of defendant's summary judgment motion, the Appellate Division upheld the constitutionality of the deemer statute against the assertion that it discriminated against out-of-state residents insured by companies authorized to transact business in New Jersey: " '[I]imperfect classifications that are part of a reasonable legislative scheme do not violate the equal protection clause.' " *Taylor–Segan, supra,* 275 *N.J.Super.* at 292, 645 *A.*2d 1272 (quoting *Watkins, supra,* 259 *N.J.Super.* at 491, 614 *A.*2d 189).

The Third Circuit Court of Appeals has also upheld the deemer statute against an equal protection challenge to its constitutionality. In *Dyszel v. Marks,* 6 *F.*3d 116 (1993), plaintiffs in consolidated cases contended that the deemer statute's automatic assignment of the verbal threshold option to out-of-state insureds solely on the basis that the insurer is authorized to transact business in New Jersey is not rationally related to the statutory purpose and violates the out-of-state insureds' right to equal protection of the law. *Id.* at 119. In the first case Rose and Michele Dyszel, Pennsylvania residents whose insurer was licensed to transact business in New Jersey, were injured in a New Jersey automobile accident. *Id.* at 121. Relying on the deemer statute, the defendant moved for summary judgment contending that the plaintiffs' claim for damages was barred by the verbal threshold. *Ibid.* The district court sustained the constitutionality of the statute, and after a hearing determined that the claim of Rose Dyszel satisfied the verbal threshold but that the claim of Michele Dyszel for non-economic damages was barred by the verbal threshold, directing a verdict against her. *Ibid.* In the second case, the district court

granted defendant's motion for summary judgment on the ground that the personal injury claim of Daniel Tumolo, a Pennsylvania resident whose insurer transacted business in New Jersey, was barred by the verbal threshold. *Id.* at 121–22. On appeal, both appellants challenged the deemer statute on equal protection grounds. *Ibid.*

The Third Circuit determined preliminarily that because the statute's application to the appellants involved "neither a fundamental constitutional right nor a suspect or quasi-suspect classification, [the constitutionality of the statute] is evaluated under the third tier of equal protection analysis—rational basis review." *Id.* at 125. In sustaining the statute, the court first noted the benefits that the deemer statute conferred on non-resident insureds:

> Under the deemer statute, residents of other states who have insurance with companies doing business in New Jersey receive significant benefits as well as certain limitations, such as losing the cause of action for non-economic injuries. For example, the deemer statute ensures that most out-of-state drivers who become involved in accidents in New Jersey receive uninsured motorist protection and $250,000 of personal injury protection. In return for this protection, out-of-state residents who have insurance with companies doing business in New Jersey are required to meet the standards of New Jersey's verbal threshold law in order to sue for non-economic injuries.
>
> [*Id.* at 127 (footnotes and emphasis omitted).]

In addition, the court observed that a rational basis supported the legislative decision to apply the statute only to non-residents whose insurers were authorized to transact business in New Jersey:

> This plan is rational. The Legislature chose insurance companies licensed to do business in New Jersey because New Jersey has the greatest amount of control over such companies. Since this group includes the largest auto insurers (such as State Farm), the legislation can reasonably be expected to have the desired effect.
>
> [*Ibid.*]

Finally, the court concluded that the Legislature acted rationally in determining that out-of-state residents insured by licensed New Jersey insurers should not be allowed to recover non-economic damages for automobile accident injuries unless they satisfied the verbal threshold:

There is also a clear rational basis to support the Legislature's determination that out-of-state residents who operate autos in New Jersey should be *precluded* from recovering for non-economic loss unless the verbal threshold is satisfied. Inherent in the no-fault system is a statutory right to recover damages without the need to satisfy a threshold. The cost of such recovery must be paid out of the auto insurance system. Appellants, and those who would fall into their category, are not New Jersey insured. As such, they are not in a position to finance the cost of non-threshold coverage. Given this situation and the Legislature's desire to reduce or contain the cost of auto insurance, the legislative judgment was rationally consistent with the purpose of the statute. Furthermore, if the broadest coverage (no threshold) was provided to persons who did not pay for it, then the added cost to the insurer would have to be borne by others, namely consumers who purchase auto insurance. The Legislature reasonably concluded that such a situation would not foster reduced auto insurance premiums.

[*Ibid.*]

### III

We first address the Appellate Division's conclusion that the Legislature did not intend the deemer statute to impose the verbal threshold on out-of-state insureds that paid for full tort coverage, 287 *N.J.Super.* at 374, 671 *A.*2d 163, and plaintiff's contention that the deemer statute as applied to him violates the Equal Protection Clauses of the United States and New Jersey Constitutions. We deem pertinent to both those issues the assertion in the *amicus* brief of State Farm Indemnity Company, corroborated by correspondence from the Attorney General to the Court, that in excess of sixty percent of all Pennsylvania private automobile insurance policyholders have elected the full tort option, which imposes no restrictions on their ability to sue for non-economic damages in Pennsylvania. That statistic strongly suggests that the deemer statute would be likely to exert a significant limiting effect on the ability of Pennsylvania insureds to recover non-economic damages for injuries sustained in New Jersey automobile accidents. We also attach substantial significance to the Legislature's inclusion in the statute that enacted the verbal threshold, *L.* 1988, *c.* 119, § 6, *amending N.J.S.A.* 39:6A–8, of a provision amending the deemer statute to impose the verbal threshold on all out-of-state insureds whose automobile policies were issued by insurers authorized to transact business in New

Jersey. Accordingly, we disagree with the Appellate Division's conclusion, 287 *N.J.Super.* at 374, 671 *A.*2d 163, that the language used by the Legislature in the deemer statute "was inadvertently overbroad and was not intended to restrict the rights of persons such as the present plaintiffs." We are convinced that the Legislature expressly intended that the deemer statute, as amended, would impose the verbal threshold on all out-of-state insureds that sustain automobile accident injuries in New Jersey and whose policies were issued by insurers authorized to transact business in New Jersey.

■ Nor do we consider it anomalous that the deemer statute would not impose the verbal threshold on non-residents insured by carriers not authorized to transact business in New Jersey. Those insureds, if involved in an automobile accident in New Jersey, would not receive the benefit of New Jersey's minimum mandatory liability coverage, uninsured motorist coverage, or personal injury protection coverage that the deemer statute mandates for non-residents insured through New Jersey authorized insurers. The legislative decision to impose the verbal threshold only on the latter class of non-resident insureds, in recognition of the substantial benefits conferred on those insureds by the deemer statute, constitutes a thoroughly rational and intelligible legislative classification.

The Legislature undoubtedly assumed that it could not compel insurers not authorized to transact business in New Jersey to provide non-resident insureds injured in New Jersey the minimum liability, uninsured motorist, and personal injury protection benefits mandated by the deemer statute, and absent the ability to provide those benefits to such non-resident insureds the Legislature may have perceived that the imposition of the verbal threshold would be unfair, inappropriate or unlawful. Although we express no view concerning the wisdom of that legislative judgment, we are persuaded that it constitutes a rational and understandable determination by the Legislature to attempt to contain the cost of automobile insurance premiums for New Jersey resi-

dents. Because non-resident insureds do not contribute to the costs incurred by New Jersey insurers in defending full tort option claims, the Legislature obviously recognized that allowing non-residents the benefit of the full tort option for damages incurred in New Jersey accidents inevitably would increase the liability exposure of New Jersey insurers and generate pressure for increased premiums. See *Dyszel, supra,* 6 *F*.3d at 127. The deemer statute is a pragmatic legislative response to that concern.

That conclusion is also dispositive of plaintiff's equal protection claims. Because the deemer statute's application to plaintiff does not implicate any fundamental constitutional right or any suspect or quasi-suspect classification, plaintiff's constitutional challenge is evaluated on the basis of the third tier of equal protection analysis, rational basis review. *Id.* at 125; *Barone v. Department of Human Servs.,* 107 *N.J.* 355, 365–67, 526 *A*.2d 1055 (1987). Although equal protection analysis under the New Jersey Constitution " 'is not a mirror image of the United States Constitution,' " *id.* at 368, 526 *A*.2d 1055 (quoting *Greenberg v. Kimmelman,* 99 *N.J.* 552, 568, 494 *A*.2d 294 (1985)), our equal protection decisions have " 'always required a real and substantial relationship between the classification and the government purpose which it purportedly serves.' " *Ibid.* (quoting *Taxpayers Ass'n v. Weymouth Township,* 80 *N.J.* 6, 43, 364 *A*.2d 1016 (1976), *cert. denied* 430 *U.S.* 977, 97 *S.Ct.* 1672, 52 *L.Ed.*2d 373 (1977)).

■ Whether we apply the rational basis standard to plaintiff's federal equal protection challenges or assess the relationship between the statutory classification and the underlying governmental purpose in evaluating the state equal protection challenge, we entertain no doubt that the constitutionality of the statute must be upheld. As noted, the Legislature's determination to contain the cost of New Jersey automobile insurance premiums by imposing the verbal threshold on non-resident insureds injured in this state and insured by companies authorized to do business here is obviously a rational and reasonable legislative judgment and one

likely to assist in accomplishing the legislative objective. More-over, a substantial relationship obviously exists between the underlying governmental purpose and the deemer statute's application only to non-resident insureds whose policies are issued by companies authorized to transact business in New Jersey. Because those carriers could be compelled to offer their non-resident insureds the benefits of New Jersey's minimum liability, uninsured motorist, and personal injury protection benefit coverages, the Legislature determined that it could appropriately impose the verbal threshold on those insureds. A statute does not violate the Equal Protection Clause merely because in practice it may result in some inequality. If a statutory distinction has some reasonable basis, "a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." *Dandridge v. Williams,* 397 *U.S.* 471, 485, 90 *S.Ct.* 1153, 1161, 25 *L.Ed.*2d 491, 501 (1970). Because we are convinced of the reasonableness of the statutory classification reflected in the deemer statute, we hold that it does not violate the Equal Protection Clause of the United States or the New Jersey Constitutions.

■ Finally, we will not disturb the conclusion of both lower courts that plaintiff's medical reports do not offer adequate objective, credible evidence to enable plaintiff to overcome the verbal threshold. Although the finding of muscle spasm by plaintiff's medical experts may constitute an objective medical finding, the Law Division concluded that that finding was not sufficiently connected to one of the statutory classifications, see *N.J.S.A.* 39:6A–8a, to satisfy the verbal threshold. We agree with that conclusion. See *Oswin, supra,* 129 *N.J.* at 320, 609 *A.*2d 415; *Chalef v. Ryerson,* 277 *N.J.Super.* 22, 37, 648 *A.*2d 1139 (App.Div. 1994).

## IV

We reverse the judgment of the Appellate Division.

*For reversal*—Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—6.

*Opposed*—None.